## 16695.   JACKSON *v.* SERVICE LAUNDRY COMPANY.

This being a suit to recover for damage alleged to have been sustained by the plaintiff by reason of having been negligently run over at a street-crossing by an automobile operated by a servant of the defendant, and it being clearly inferable from the evidence that the driver of the automobile negligently ran over the plaintiff, and that the driver was the agent or servant of the defendant, acting within the scope of his authority and within the line of his duty, the trial judge erred in directing a verdict for the defendant.

DECIDED SEPTEMBER 23, 1926.

Action for damages; from city court of Atlanta—Judge Reid. June 13, 1925.

*Hewlett & Dennis,* for plaintiff.

*McDaniel & Neely,* for defendant.

STEPHENS, J. Mrs. Annie Jackson brought suit against the Service Laundry Company, for injuries alleged to have been received by her as a result of being run over, at the corner of Washington Street and Capitol Square in the City of Atlanta, by an automobile truck belonging to the defendant. The evidence clearly authorizes an inference that the driver of the truck negligently ran over the plaintiff and injured her. The trial judge directed a verdict for the defendant, upon the sole ground that the evidence failed to show that the driver of the truck at the time of the injury was, in operating the truck, acting within the scope of his authority as the servant of the defendant.

There was evidence for the defendant that the truck at the time was being operated by a negro in its employ by the name of Frank McDonald; that the truck was regularly operated by a man in its employ by the name of Adams, but that Frank, without authority from the defendant, had taken Mr. Adams home and was going back with the truck when the truck ran over the plaintiff. Frank testified that he was the driver of the truck at the time of the injury, but his testimony was impeached by a witness who testified that Frank had stated to him that he was not at the time the driver of the truck. Adams testified that he was at home, which was

in the neighborhood of the accident at the time of its occurrence, and that he came up to the place of the accident at the request of Frank McDonald, who had come down to Adams' house after the accident and reported the accident to Adams. A witness by the name of Morris testified that he saw the accident and came up immediately afterwards and saw Adams there, that he knew Adams because he had seen him deliver laundry around that neighborhood, that he came up just a minute or two after the accident happened, that he never saw Frank McDonald before in his life. The husband of the plaintiff, who was with her at the time of the accident, testified that the driver of the truck was one Mr. Adams. The witness does not testify that he saw Mr. Adams driving the truck, but he testifies that Adams stopped him when he, the witness, was trying to get the number of the truck and requested witness not to call the police and not to have a case made, that Adams drove the truck away after the accident, "put the key in" and started the automobile, and drove it to the hospital with the witness and the plaintiff. The conductor of a passing street-car testified that as soon as the accident happened he jumped off of his car and ran to the place of the accident, and that Adams was there when the witness got there; the witness never saw the negro Frank McDonald there at all.

Another witness, named Bennett, testified that he saw the truck hit the plaintiff, that he did not see any one get out of the truck after the accident and run, that he could have seen it if it had happened, that besides the plaintiff and her husband he saw another man standing back of the truck when witness got there, that this man was a white man and was not Frank McDonald, that no man ran from the truck from the time the accident happened until the witness got there, and that the witness got there in just a second.

From this evidence it is clearly inferable that Adams, and not Frank McDonald, was the driver of the truck at the time it ran over the plaintiff and injured her. There is evidence to the effect that Adams was in the employ of the defendant company as a driver of this truck, that his duties were to collect and deliver laundry, and his territory for collecting and delivering laundry was in the neighborhood in which the accident occurred; and while the accident occurred about 7:30 at night after Adams had, ac-

cording to a witness for the defendant, "checked in," there was evidence from the same witness to the effect that laundry drivers came in at any time from the time they got out until two o'clock at night, and that there were "no regulations on that line at all." Morris, a witness for the plaintiff, who testified that he saw the accident and came up to the scene of the accident immediately afterwards, testified that the truck contained "laundry," that he saw in the truck packages wrapped like laundry packages, that some of them had laundry marks upon them, that it was light around there so that he could see, and that "there was an arc light right up in front."

From the evidence we think it is clearly inferable that Adams was the driver of the car, and that he was driving it in the line of his duty as agent for the defendant to collect and deliver laundry. It being clearly inferable, from the evidence, that the driver of the car negligently ran over the plaintiff, and that the driver of the car was the agent or servant of the plaintiff acting within the scope of his authority and within his line of duty, the trial judge erred in directing a verdict for the defendant.

*Judgment reversed. Bell, J., concurs. Jenkins, P. J., disqualified.*